| | | |
|---|---|---|
| STATE OF INDIANA | ) | MARION SUPERIOR COURT 1 |
| | | COMMERCIAL COURT DOCKET |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO. |
| | ) | |
| ROLLS-ROYCE NORTH AMERICAN | ) | |
| TECHNOLOGIES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DYNETICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Rolls-Royce North American Technologies Inc. ("LibertyWorks"), by its attorneys, alleges and states as follows for its Verified Complaint against Defendant Dynetics, Inc. ("Dynetics"):

### SUMMARY OF ACTION

1.     LibertyWorks (a subsidiary of Rolls-Royce Corporation) and Dynetics are parties to a Teaming Agreement related to the development of a tactical vehicle incorporating a high-energy laser for the United States Army ("Army" or "Government"). LibertyWorks has invested ten years and almost $50 million in developing the power and thermal technology that will be used in the tactical vehicle and has been working with Dynetics in furtherance of this project for over two years. Critical to the Teaming Agreement and the sanctity of the Parties' joint product development are the exclusivity provision in Paragraph 6 and the dispute resolution clause in Paragraph 10. The exclusivity provision ensures that, after investing substantial time and resources in the project, neither Party can usurp the business opportunity and join with another vendor to complete the project. Also, the dispute resolution clause in Paragraph 10 ensures that in the event of a dispute, the Parties must work towards a resolution and, if one is not found, then it is promptly

1

submitted to final and binding determination.  In other words, in as much as the exclusivity provision is a check on either Party being able to usurp the business opportunity for itself, the dispute resolution clause ensures that the Party cannot unilaterally claim the exclusivity requirements have not been met.

2.      Yet Dynetics has done just that.  Having the benefit of LibertyWorks's intellectual property and expertise for years, Dynetics has now manufactured a dispute and declared the Teaming Agreement terminated, in a transparent effort to avoid its exclusivity obligations and jettison LibertyWorks for another vendor.  And as further evidence of its bad faith, Dynetics has refused to participate in the Teaming Agreement's dispute resolution process, which requires the Parties to arbitrate any dispute concerning the Teaming Agreement, including any purported breach, termination of exclusivity or the Teaming Agreement itself.  Instead, Dynetics has disregarded the terms of the Teaming Agreement and decided to proceed with another vendor while disavowing its obligation to engage in the dispute resolution process by urging that "such efforts would appear to be futile."

3.      LibertyWorks has initiated arbitration and seeks immediate injunctive relief from this Court **only** to preserve the status quo—to prevent Dynetics from circumventing the agreed upon dispute resolution process and teaming with another vendor before an arbitrator is afforded the opportunity to determine whether Dynetics has the right to do so.

4.      LibertyWorks has spent 10 years and almost $50 million developing this technology and has shared its extensive intellectual property with Dynetics.  But most importantly, LibertyWorks's participation in this project involving cutting-edge high-energy laser technology would provide it with a first-to-market advantage.  Allowing Dynetics to cast LibertyWorks aside based on a manufactured dispute as a pretext—without fulfilling the dispute resolution process set

out in the Teaming Agreement—would cause LibertyWorks irreparable harm that cannot otherwise be remedied through money damages.

## PARTIES, JURISDICTION, AND VENUE

5.      Plaintiff Rolls-Royce North American Technologies Inc. is a corporation organized and existing under the laws of the State of Delaware.  Its principal offices, facilities and place of business are at 2059 S. Tibbs Ave., Indianapolis, Indiana 46241.

6.      Defendant Dynetics, Inc., is a corporation organized and existing under the laws of the State of Alabama.  Upon information and belief, Dynetics's principal office and place of business is located at 1002 Explorer Boulevard, Huntsville, Alabama 35806.

7.      Personal jurisdiction is proper over Dynetics in this Court under Indiana Trial Rule 4.4(A).  Dynetics has done and is doing business with LibertyWorks in Indiana, including in relation to the negotiation, implementation and performance of the Teaming Agreement. Dynetics's representatives have also frequently visited the LibertyWorks facilities in Indiana to meet with LibertyWorks's representatives as part of the program implementation and management.

8.      This case is eligible for the Commercial Court Docket because the gravamen of the case relates to a dispute between two business entities as to their business activities relating to the contract, transactions, and/or relationships between them, including issues regarding trade secrets and non-disclosure obligations.  *See* Comm'l Ct. Rule 2(E).

9.      Venue is proper in this Court because LibertyWorks has its principal offices, personnel and facilities in Marion County, and because the parties' business dealings took place in Marion County, Indiana.

## FACTUAL BACKGROUND

### The Teaming Agreement

10.     Rolls-Royce has been building aircraft engines and other technological marvels since the company's founding in 1904.  Throughout its long and distinguished history, it also has been providing its goods, services, and expertise to the U.S. Government pursuant to Government contracts and subcontracts to benefit our nation's military forces and other agencies. LibertyWorks, based in Indianapolis, Indiana, is a wholly-owned Rolls-Royce subsidiary that performs a number of these U.S. Government contracts, with particular emphasis on developing advanced technology for propulsion and power often involving classified data and programs of vital importance to our national security.

11.     LibertyWorks focuses on serving the branches of the United States armed forces, working with the Army Rapid Capabilities & Critical Technologies Office, the Defense Advanced Research Projects Agency, NASA, the Air Force Research Laboratory, and the Office of Naval Research.

12.     Building on decades of experience and strong business connections, LibertyWorks frequently partners with other businesses to provide comprehensive research and development services to the United States military.  Often, these partnerships are memorialized in teaming agreements under which LibertyWorks and its partner agree to work together to submit a proposal in response to a Government solicitation and perform any resulting contract.  These teaming agreements frequently require the parties to work exclusively with each other for the duration of the contract.

13.     In 2017, the United States Army released a Request for Proposals ("RFP") for development of a vehicle-based high-energy laser.

14.     On April 21, 2017, the Parties entered the Teaming Agreement, pursuant to which Dynetics would submit a proposal to the Army as the prime contractor, and LibertyWorks would serve as the exclusive subcontractor for the power and thermal energy portion of the project. (Teaming Agreement attached hereto as **Exhibit A**).  This Teaming Agreement would allow the Parties to present the strongest response to the RFP, thereby best positioning the team to receive the contract award and ensuing task orders from the Government.

15.     The Teaming Agreement is valid "through the period of the contract should the Prime win award of the Contract."  Ex. A at ¶ 7.

**The Parties Agree to an Exclusive Relationship Protected by Dispute Resolution Provisions**

16.     The Teaming Agreement contemplated Dynetics being the client-facing partner, responding directly to the Government's RFP.  The exclusivity provision is a critical part of this (and any) teaming relationship and provided important benefits to both Dynetics and LibertyWorks.  The provision protected Dynetics by preventing LibertyWorks from participating in a response to the RFP with a different team—thereby giving the Dynetics team a competitive advantage over other offerors.  The provision protects LibertyWorks by preventing Dynetics from engaging a different company to work on this RFP, particularly after LibertyWorks shared proprietary information with Dynetics.  This exclusivity provision provides that:

> Dynetics agrees that where Subcontractor can meet: (1) pricing targets established by [Dynetics]; (2) schedule requirements; and (3) technical capabilities, Subcontractor shall be Dynetics' exclusive source for the scope listed in Exhibit A Section 6 (Power and Thermal Management) and shall not pursue or use other proposals for this scope (Power and Thermal Management) of the Contract during the term of this Agreement subject [sic] the exceptions noted above.

Ex. A ¶ 6.

17.     The Teaming Agreement also sets forth a specific dispute resolution procedure to be followed in the event of a disagreement arising between the Parties.  This process requires that:

Any dispute, controversy or disagreement arising out of, relating to or resulting from this Agreement which is not disposed of by mutual agreement within a period of ten (10) days after one party has provided written notice of the dispute to the other, shall be subject to Executive Level review by Dynetics and Subcontractor. If this review process is not successful within a reasonable period of time (normally 15–30 days, unless extended by agreement of the Parties), then *the matter shall be designated as a dispute and shall be submitted to and settled by final and binding arbitration* enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA") and conducted pursuant to the then current rules of the American Arbitration Association.

Ex. A ¶ 10.10 (emphasis added).

18.     Again, this provision provides mutual benefits to the Parties and was reflective of their substantial investment and collaboration by assuring their commitment to work through any disputes that came up at the highest levels, and, to the extent resolution could not be had, then to have them submitted and settled by final and binding arbitration before one side took action.

19.     These provisions set forth explicit protections for the Parties, and particularly for LibertyWorks in its subcontractor role.  LibertyWorks would function as the exclusive member of Dynetics's team for the power and thermal management portion of the Contract.  Only with this exclusivity protection would LibertyWorks agree not to team with a different prime contractor.

## After Two Years, Dynetics Manufactures a Dispute as a Pretext in an Effort to Terminate LibertyWorks's Exclusivity Protections

20.     Dynetics submitted a proposal in response to the RFP, which incorporated information provided by LibertyWorks.  Based upon that proposal, and in recognition of LibertyWorks's position on the team, the United States Army awarded Dynetics a contract in August 2017 (the "Contract").  The Parties promptly started working together, as contemplated by the Teaming Agreement.  In the interest of time, the parties executed Purchase Orders on September 20, 2017, and October 25, 2017, to cover the initial phases of the work, and entered into a more comprehensive Subcontract Agreement effective February 3, 2018.

21.     Not long after the effective date of the Subcontract Agreement, the Parties began discussing significant changes to the power and thermal management system from the original proposal in 2017 for the next phase of the project, which is known as Option 3.  In February 2019, Dynetics requested a proposal from LibertyWorks for this new power and thermal management system for Option 3.

22.     Importantly, Dynetics never provided LibertyWorks with a "pricing target" for this new power and thermal management system.  Instead, the Parties negotiated the price of Option 3 over the next few months.  Dynetics issued a Stop Work Order on March 19, 2019, requiring LibertyWorks to stop its ongoing work related to Option 3 pending further pricing negotiations.  Those negotiations continued.

23.     On April 25, 2019, after several rounds of negotiation, LibertyWorks submitted a final pricing proposal for Option 3 that totaled ███████████████████████████████ ██████████████████████████████████████████████████.  (Letter attached hereto as **Exhibit B**).

24.     Dynetics agreed to the price proposal the very next day, telling LibertyWorks "thank you for your teams [sic] diligent efforts the past few weeks as worked [sic] *to come to a resolution on Option Year 3.*"  (Email attached hereto as **Exhibit C** (emphasis added)).  This had the effect of reversing the stop work order, as Dynetics instructed LibertyWorks to begin a portion of the work on Option Year 3.  *See* Ex. C.  Dynetics also issued a task order under the Parties' Subcontract Agreement indicating that it had now exercised Option 3 and work should proceed. *See* Ex. C.  Furthermore, Mr. Ronnie Chronister, Dynetics's Vice President of Contracts, confirmed in a telephone conversation on April 26 that the April 25 price proposal was acceptable. Dynetics confirmed in their words and conduct, as of April 26, 2019, that the Parties had an

agreement on the price for Option 3. This understanding was reinforced in subsequent correspondence, including a July 24, 2019, email in which Dynetics identified three remaining issues to be discussed, which did not include pricing as a discrete issue. (Email attached hereto as **Exhibit D**).

25.     The Parties continued to work together over the next four months to finalize other non-price terms for Option 3. Then, suddenly on September 17, 2019, LibertyWorks received a letter from Dynetics claiming, for the very first time, that LibertyWorks had failed to meet the requirements for exclusivity outlined in Paragraph 6 of the Teaming Agreement. (Letter attached hereto as **Exhibit E**). In that letter, Dynetics alleged that LibertyWorks failed to properly engage with Dynetics regarding price negotiations, and also failed to provide realistic schedules. Dynetics concluded that:

> Dynetics has no choice but to end exclusivity under Section 6 of the Teaming Agreement. . . . [w]ith the exclusivity provision no longer applicable, ***Dynetics is under no obligation to provide an award to Rolls-Royce*** for any or all of the Option 3 work and/or future work under the prime contract or D3I. In this regard, ***Dynetics may solicit bids*** and compete for any or all work under Option 3 and/or future efforts including any Power and Thermal Management work.

Ex. E (emphasis added). Dynetics also stated that they could terminate the Teaming Agreement in its entirety, but did not do so at that time. *See* Ex. E.

26.     LibertyWorks was stunned. Contrary to Dynetics's claims, LibertyWorks had negotiated Option 3 pricing with Dynetics in earnest and, by Dynetics's own admission, the Parties had "come to a resolution on Option Year 3." LibertyWorks had then proceeded to perform the requested services, unaware of any concern or disagreement by Dynetics regarding the Option 3 pricing or any other significant issue regarding the exclusivity requirements under the Teaming Agreement. LibertyWorks was accordingly surprised when Dynetics suddenly claimed that

LibertyWorks had failed to meet pricing targets, despite the fact that Dynetics had never provided any such targets to LibertyWorks or otherwise expressed concern with the agreed-upon pricing.

27.    LibertyWorks responded to the letter on September 26, 2019, laying out in detail the reasons why LibertyWorks had satisfied the exclusivity requirements of the Teaming Agreement.  (Letter attached hereto as **Exhibit F**).  LibertyWorks's response also addressed Dynetics's alleged concerns of dissatisfaction regarding battery specifications, and the timing of the contract negotiations.  *See* Ex. F at 3.

28.    Due to the disagreement between LibertyWorks and Dynetics, LibertyWorks confirmed in its September 26 letter that it disputed Dynetics's claims, and that therefore "the process for dispute resolution under Section 10.10 of the Teaming Agreement is hereby initiated." Ex. F at 1.  Dynetics responded on September 30, recognizing that the dispute process was engaged and stating that they would "schedul[e] the executive management meeting as required under Section 10.10 of the Teaming Agreement."  (Letter attached hereto as **Exhibit G**).

29.    The Teaming Agreement sets forth specific dispute resolution procedures in such a circumstance.  Disputes that are not resolved within ten days of providing notice of the dispute are subject to executive level review by both parties, which the Parties expressly stated would normally take 15–30 days.  *See* Ex. A at ¶ 10.10.  Then,

> If this review process is not successful within a reasonable period of time (normally 15–30 days, unless extended by agreement of the Parties), then ***the matter shall be designated as a dispute and shall be submitted to and settled by final and binding arbitration enforceable under the Federal Arbitration Act***, 9 U.S.C. §§ 1 *et seq.*

Ex. A at ¶ 10.10 (emphasis added).  The ten-day resolution period had barely begun, before Dynetics was discussing scheduling a telephone call that would constitute the executive level review.

30.     LibertyWorks asked Dynetics to delay the conference call until both Parties could conduct a meaningful internal executive review and gain a more thorough understanding of the issues in Dynetics's September 17 letter.  Dynetics insisted on going forward with the telephone call.  LibertyWorks reluctantly agreed to participate as an opportunity to hear Dynetics's substantive response to LibertyWorks's September 26 letter.

31.     The Parties held a phone call on October 7.  LibertyWorks made clear that this conversation was an opportunity to gain more information about Dynetics's position so that a thorough internal executive level review could be conducted later.  Dynetics provided no additional substantive detail about the purported failure in performance, except to provide entirely new and wholly-unsubstantiated claims of failure.  Not surprisingly, the dispute was not resolved during that phone call.  At the conclusion of the call, Dynetics informed LibertyWorks that they viewed that conversation as completion of the executive level review, despite the lack of substance concerning the purported failure to perform, the greatly accelerated timetable and the fact that the Teaming Agreement contemplated a 15–30 day period for a proper good-faith review; not an insubstantial ninety-minute phone call between the Parties.

32.     Mere hours after the Parties completed their telephone call, Dynetics sent a letter to LibertyWorks.  (Letter attached hereto as **Exhibit H**).  This letter was curt.  It stated "Dynetics considers the Executive Level Review process complete with the Parties unable to reach agreement. ***Consequently, Dynetics shall enforce its determination that LibertyWorks no longer qualifies for exclusivity under the Teaming Agreement.***"  Ex. H (emphasis added).  This response, composed the very same day as the phone call, made clear that Dynetics had no intention of attempting to resolve the dispute in good faith.  Instead, in contravention of the explicit requirements of the dispute mechanism specified in the Teaming Agreement, Dynetics was intent

on terminating exclusivity and partnering with another company as soon as possible.  The Teaming Agreement provided for 15–30 days of executive negotiation.  *See* Ex. A at ¶ 10.10.  The executive call had barely ended before Dynetics informed LibertyWorks that any attempt to resolve the dispute would be hopeless.

<u>**Dynetics Ignores the Teaming Agreement's Mandatory Arbitration Requirement**</u>

33.     Even if the October 7 phone call did qualify as the executive level review referenced in the dispute resolution provision of the Teaming Agreement (it did not), Dynetics ignored a different, but just as critical, contractual requirement.  The Teaming Agreement requires that unresolved disputes "shall be submitted to and settled by final and binding arbitration."  Ex. A at ¶ 10.10.  Dynetics made it clear that they did not intend to abide by this requirement, stating that "Dynetics shall enforce its determination that LibertyWorks no longer qualifies for exclusivity under the Teaming Agreement."  Ex. H.  But the Teaming Agreement clearly requires the Parties to arbitrate any such dispute before Dynetics may regard exclusivity (or the Teaming Agreement itself) terminated.

34.     LibertyWorks promptly reminded Dynetics of their contractual requirement to arbitrate the dispute by letter dated October 10.  (Letter attached hereto as **Exhibit I**).  This included a request that Dynetics confirm whether they stood by their assertion that they viewed the exclusivity provision as immediately terminated.  In such an event, LibertyWorks informed Dynetics that they would enforce their rights.

35.     Dynetics responded by taking yet another unauthorized action in breach of the Teaming Agreement.  By letter on October 15, 2019, Dynetics informed LibertyWorks that it was terminating the Teaming Agreement.  (Letter attached hereto as **Exhibit J**).  This letter did not provide any additional details as a basis for such an action, beyond referencing their incorrect

assertions regarding the exclusivity provision.  Dynetics concluded that "Dynetics has no choice but to solicit bids for the current work and any further effort from others."  Ex. J.

36.     In addition, seemingly recognizing its previous breach of the Teaming Agreement, Dynetics changed course.  Dynetics suddenly claimed that it would still "respond to any request for Executive Level review or arbitration."  Ex. J.  However, Dynetics attempted to discourage LibertyWorks from exercising its rights by noting that "such efforts would appear to be futile due to the nature of LibertyWorks [sic] default and this limitation of liability."  Ex. J.  Dynetics also said that they did not have to "maintain the *status quo* pending the completion of this process contrary to LibertyWorks' position."  Ex. J.

37.     Despite Dynetics's position, LibertyWorks is entitled to maintain the status quo before having its dispute heard by an arbitrator, and such efforts would not be "futile." Accordingly, on October 20, 2019, LibertyWorks filed a demand for arbitration before the American Arbitration Association, as required by the Teaming Agreement.  (Demand attached hereto as **Exhibit K**).

38.     The sudden urgency with which Dynetics has attempted to divorce itself from its previously amicable and profitable relationship with LibertyWorks suggests that everything is not as it seems.  LibertyWorks entered the exclusive Teaming Agreement to ensure that Dynetics could not simply cast it aside after years of working together and sharing millions of dollars in intellectual property.  Now Dynetics has manufactured a dispute as a pretext to do just that—and without participating in the Teaming Agreement's dispute resolution process.  Because of the almost $50 million investment required for LibertyWorks to be at its present technology readiness level, LibertyWorks strongly believes that no other vendor could meet the requirements and timetable for this project with Dynetics, which raises a serious threat of Dynetics sharing LibertyWorks's

intellectual property.  Dynetics also has failed to substantiate its naked claims that LibertyWorks has not performed its obligations under the Teaming Agreement.  Accordingly, all LibertyWorks asks of this Court is to preserve the status quo until the Parties can have their dispute decided by arbitration as required by the Teaming Agreement.[1]

## COUNT I – Declaratory Judgment

39.     The foregoing paragraphs are incorporated by reference and re-alleged herein.

40.     LibertyWorks seeks a declaratory judgment stating that Dynetics is contractually obligated to comply with the dispute resolution provision of the Teaming Agreement, including participating in binding arbitration in accordance therewith, instead of unilaterally declaring the exclusivity provision of no effect and the Teaming Agreement terminated.

41.     The Teaming Agreement is clear.

> If this review process is not successful within a reasonable period of time (normally 15–30 days, unless extended by agreement of the Parties), then ***the matter shall be designated as a dispute and shall be submitted to and settled by final and binding arbitration enforceable under the Federal Arbitration Act***, 9 U.S.C. §§ 1 *et seq.*"

Ex. A at ¶ 10.10 (emphasis added).  The Parties recognized that they disagreed regarding whether the exclusivity provisions were still enforceable, through written correspondence.  *See* Exs. F and G.  Dynetics also recognized that "LibertyWorks designates the matter a dispute per Section 10.10 of the Teaming Agreement," that "the dispute process has been engaged," and that they would proceed "as required under Section 10.10 of the Teaming Agreement."  Ex. G.

---

[1] This lawsuit is not intended to waive or in any other way limit LibertyWorks's right to arbitrate its disputes, as required by the Teaming Agreement.  The Alabama Supreme Court has recognized courts' jurisdiction to grant equitable relief when necessary, even when considering disputes subject to mandatory arbitration.  *See Spinks v. Automation Pers. Servs., Inc.*, 49 So.3d 186, 189–90 (2010).  *Spinks* recognized that there are situations where "a binding arbitration clause does not bar a plaintiff from seeking emergency injunctive relief or other provisional remedies in court."  *Id.* at 189 (quoting *Holiday Isle, LLC v. Adkins*, 12 So.3d 1173, 1177 (Ala. 2008)).  One such situation is where "an arbitral award could not return the parties substantially to the status quo," due to an ongoing breach of a contractual agreement.  *See id.* at 189–90.  That situation is present here.

42.     Despite this acknowledgment, Dynetics then proceeded to ignore the mandatory arbitration entirely.  After the hastily-organized call on October 7, Dynetics declared that very day that "Dynetics shall enforce its determination that LibertyWorks no longer qualifies for exclusivity under the Teaming Agreement." Ex. H.  LibertyWorks disputed this assertion in its October 10 letter.  *See* Ex. I.  Dynetics then doubled-down on their position by terminating the Teaming Agreement in its entirety on October 15, 2019.  *See* Ex. J.

43.     LibertyWorks had already initiated the dispute resolution provision regarding Dynetics's unilateral assertion that it could terminate either the exclusivity provision or the Teaming Agreement as a whole, *see* Ex. F, but Dynetics still refused to arbitrate these issues prior to declaring the Teaming Agreement terminated.  In its October 15 letter, Dynetics says that they will "respond" to a request for arbitration, while also saying that they are not required "to maintain the *status quo* pending the completion of this process contrary to LibertyWorks' position." Ex. J. Dynetics must be compelled to see the dispute resolution process through in its entirety.

44.     This dispute represents a bona fide justiciable controversy ripe for adjudication. LibertyWorks has been harmed by Dynetics's termination of the Teaming Agreement and stated intention to solicit bids in breach of the exclusivity provision.  A declaratory judgment ordering Dynetics to arbitrate this dispute is necessary to protect LibertyWorks's rights.

45.     Dynetics cannot appoint itself judge, jury, and executioner.  Dynetics's claims of a failure of performance are unfounded and contested by LibertyWorks.  The dispute resolution requirements are explicit and not in question.  Final and binding arbitration is mandatory under the Teaming Agreement, in order to protect the Parties' rights.  LibertyWorks has filed its demand for arbitration; Dynetics must abide by its contractual obligations.  A declaratory judgment confirming this obligation is warranted.  Such an order would do nothing more than confirm that the Parties

must abide by the status quo: the exclusivity provision applies until and unless the American Arbitration Association declares that it is ineffective or that the Teaming Agreement is justifiably terminated.

### COUNT II – Breach of Contract by Failing to Comply with the Dispute Resolution Provision

46.     The foregoing paragraphs are incorporated by reference and re-alleged herein.

47.     The Teaming Agreement is a lawfully executed and binding contract between the Parties.

48.     LibertyWorks has fully performed its obligations under the Teaming Agreement.

49.     Dynetics has informed LibertyWorks that it views the exclusivity provisions of the Teaming Agreement as of no effect, and that it was entitled to terminate the Teaming Agreement as a whole.  *See* Exs. H, J.  It reached this position despite the failure to complete binding arbitration before the American Arbitration Association, as required by the Teaming Agreement.  *See* ¶ 10.10. This failure represented a breach of Dynetics's contractual obligations owed to LibertyWorks, through Dynetics's nonperformance.

50.     LibertyWorks has filed for arbitration in accordance with the Teaming Agreement. *See* Ex. K.  LibertyWorks remains ready and willing to pursue that arbitration.

51.     LibertyWorks has been damaged through Dynetics's attempt to circumvent and negate LibertyWorks's contractual rights, including the right to mandatory binding arbitration.

### COUNT III – Breach of Contract by Breaching the Exclusivity Provision and by Terminating the Teaming Agreement

52.     The foregoing paragraphs are incorporated by reference and re-alleged herein.

53.     The Teaming Agreement is a lawfully executed and binding contract between the Parties.

54.     LibertyWorks has fully performed its obligations under the Teaming Agreement.

55.     Dynetics has informed LibertyWorks that it views the exclusivity provisions of the Teaming Agreement as of no effect.  *See* Ex. H.  Dynetics has stated that "Dynetics shall enforce its determination that LibertyWorks no longer qualifies for exclusivity under the Teaming Agreement."  Ex. H.  This represents an unequivocal statement that Dynetics intends to, and may already be in the process of, breaching the exclusivity provision.

56.     Dynetics then informed LibertyWorks on October 15 that it was unilaterally terminating the Teaming Agreement.  This termination was done without giving LibertyWorks a chance to cure any alleged breaches, and without abiding by the dispute resolution process.  Dynetics also stated that it "has no choice but to solicit bids for the current work and any future effort from others."  Ex. J.

57.     Dynetics's claim that LibertyWorks is no longer entitled to exclusivity and may terminate the Teaming Agreement is based on unsubstantiated and incorrect allegations, including Dynetics's failure to provide LibertyWorks with pricing targets.  There is therefore no basis to declare the exclusivity provision of no effect or the Teaming Agreement terminated.

58.     LibertyWorks remains committed to fully performing under the exclusivity provisions specifically and the Teaming Agreement as a whole and remains committed to working with Dynetics—and only Dynetics.

59.     LibertyWorks has been damaged through Dynetics's unilateral termination of the Teaming Agreement and refusal to abide by the exclusivity provision, thereby denying LibertyWorks its bargained-for status as Dynetics's exclusive partner on the Contract.

### COUNT IV – Anticipatory Breach of Contract by Planning to Engage Other Companies

60.     The foregoing paragraphs are incorporated by reference and re-alleged herein.

61.     The Teaming Agreement is a lawfully executed and binding contract between the Parties.

62.     LibertyWorks has fully performed its obligations under the Teaming Agreement.

63.     Dynetics has informed LibertyWorks that it intends to negotiate and contract with other companies, in direct violation of the exclusivity provision of the Teaming Agreement, stating: "Dynetics shall enforce its determination that LibertyWorks no longer qualifies for exclusivity under the Teaming Agreement." Ex. H.  Dynetics then stated that "Dynetics has no choice but to solicit bids for the current work and any further effort from others." Ex. J.  These represent positive and unconditional statements of Dynetics's intention to refuse to perform under the exclusivity provision of the Teaming Agreement, underscored by Dynetics's unilateral termination of the Teaming Agreement as a whole.

64.     By reaching out to and contracting with other companies in the industry, Dynetics will cause, unless restrained and enjoined by this Court, irreparable harm and injury to LibertyWorks.  LibertyWorks has no adequate remedy at law.

**COUNT V – Request for Temporary, Preliminary, and Permanent Injunctive Relief**

65.     The foregoing paragraphs are incorporated by reference and re-alleged herein.

66.     Dynetics's conduct, as set forth in the foregoing paragraphs, constitutes a violation of its legal and contractual duties to LibertyWorks.

67.     LibertyWorks will suffer immediate and irreparable harm if Dynetics is not temporarily, preliminarily, and permanently ordered to refrain from directly or indirectly violating the exclusivity provision of the Teaming Agreement by reaching out to and/or contracting with other companies related to the Contract and/or using LibertyWorks's confidential, proprietary, and trade secret information and violating the Parties' negotiated and agreed-upon dispute resolution provision by taking these actions prior to completion of the Executive Level review and binding arbitration before the American Arbitration Association.

68.   LibertyWorks's business will suffer immediate harm if the request for injunctive relief is denied.  By contrast, Dynetics will suffer little harm as they would merely be upholding the obligations that they previously agreed to honor as consideration for the Teaming Agreement with LibertyWorks.  This would be the status quo.

69.   Unless injunctive relief is granted to LibertyWorks, it is likely that any subsequent arbitration proceedings will be a mere "hollow formality," as Dynetics has made clear its imminent intentions to take actions that no arbitral award can undo.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 215 (7th Cir. 1993) ("The TRO served to maintain the status quo without prejudice to the merits of any of the parties' claims or defenses until an arbitration panel could consider the issues presented.") (citing  *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1052–53 (2d Cir. 1990) (noting that arbitration can become a "hollow formality" absent a court's ability "to preserve the meaningfulness of the arbitration")); *Holiday Isle, LLC v. Adkins*, 12 So. 3d 1173, 1184–85 (Ala. 2008) (enjoining a party from negotiation letters of credit until after an arbitral ruling and stating "equitable relief is appropriate when an arbitral award could not return the parties substantially to the status quo, particularly if the enjoined conduct would render the arbitration process a 'hollow formality,' i.e., 'the arbitral award when rendered could not return the parties substantially to the status quo ante.'") (internal quotation marks omitted) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1052 (4th Cir. 1985)).

70.   LibertyWorks is likely to succeed on the merits of its claims that arbitration is required under the dispute resolution provision of the Teaming Agreement, and that the exclusivity provision remains in full force and effect.

71.   LibertyWorks has no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, LibertyWorks prays the Court enter judgment in its favor and against Dynetics and award the following relief:

1.     That LibertyWorks be awarded a temporary restraining order and preliminary and permanent injunction enjoining Dynetics and their respective agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents, subsidiaries, related corporations and companies, and all others in privity or acting in concert with them, from contacting other companies related to services under the Contract (including, without limitation, soliciting, accepting, reviewing or discussing any bid or proposal of any nature), in violation of the exclusivity agreement in the Parties' Teaming Agreement;

2.     That LibertyWorks be granted a trial by jury in this matter on all matters so triable;

3.     That LibertyWorks be awarded all damages owed to it by Dynetics under the Teaming Agreement, as a result of the various breaches included in the above Counts;

4.     That LibertyWorks be awarded interest on the amount awarded at trial at the prevailing rate;

5.     That LibertyWorks be granted a declaratory judgment that Dynetics must pursue mandatory binding arbitration as required under the Teaming Agreement, and that Dynetics's unilateral declaration that the exclusivity provision and the Teaming Agreement have been terminated is nullified and of no legal force or effect;

6.     That LibertyWorks be awarded costs and attorney's fees in this matter; and

7.      That LibertyWorks be awarded such other and further relief as the Court deems appropriate.

## JURY TRIAL DEMAND

LibertyWorks requests a jury trial on all questions of fact raised by this Verified Complaint for Injunctive Relief and Damages.

## VERIFICATION

I, _MARK WILSON_, _CHIEF OPERATING OFFICER_

of Rolls-Royce North American Technologies Inc., do hereby affirm, under the penalties for

perjury, that the facts alleged in the foregoing Verified Complaint for Injunctive Relief and

Damages are true and correct to the best of my knowledge, information and belief.

ROLLS-ROYCE NORTH AMERICAN
TECHNOLOGIES INC.

Dated: October _19_, 2019                _____

Dated: October 20, 2019                Respectfully submitted,


                                       ROLLS-ROYCE NORTH AMERICAN
                                       TECHNOLOGIES INC.

                                       /s/ Andrew J. Miroff
                                       Andrew J. Miroff, Atty. No. 21749-49
                                       ICE MILLER LLP
                                       One American Square, Suite 2900
                                       Indianapolis, IN 46282-0200
                                       (317) 236-2100
                                       drew.miroff@icemiller.com

                                       Brett Ingerman *(to be admitted pro hac vice)*
                                       Dawn Stern *(to be admitted pro hac vice)*
                                       DLA PIPER LLP (US)
                                       6225 Smith Avenue
                                       Baltimore, MD  21209
                                       Telephone:  (410) 580-3000
                                       Facsimile:   (410) 580-3001
                                       brett.ingerman@dlapiper.com
                                       dawn.stern@dlapiper.com

                                       *Counsel for Plaintiff Rolls-Royce North American*
                                       *Technologies Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was emailed and sent via

regular mail on October 20, 2019, to the following address:

Robert J. Symon, Esq.
Bradley Arrant Boult Cummings LLP
1615 L Street NW, Suite 1350
Washington, DC 20036
rsymon@bradley.com

<div style="margin-left:40%">

/s/ Andrew J. Miroff
Andrew J. Miroff, Atty. No. 21749-49
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200
(317) 236-2100
drew.miroff@icemiller.com

*Counsel for Plaintiff Rolls-Royce North American Technologies Inc.*

</div>

# Exhibit A

# Exhibit B



**Rolls-Royce North American
Technologies Inc. | LibertyWorks®**
P.O. Box 7162, Speed Code X12
Indianapolis, IN 46207-7162 USA

Tel: 317-478-7991
Email: james.pinyerd@rolls-royce.com

April 25, 2019

Rachel Cope
Dynetics, Inc.
1002 Explorer Blvd.
Huntsville, AL 35806

Subject:      Update to LibertyWorks® Proposal for HEL-TVD Option 3

Dear Ms. Cope:

As a result of discussions this week with Dynetics, LibertyWorks has identified additional
opportunities in its proposal to reduce hours.  After subtracting these recently identified hours,
LibertyWorks' total proposal now comprises ██████████, which is a reduction of ██████████
from the previous proposal.

With █████ total hours, the price of LibertyWorks' proposal is approximately █████, which
includes labor, travel, and the █████ in material previously discussed (i.e., "thermal and other
system related hardware" identified in the Do-Buy list submitted on March 29, 2019).
Therefore, the total PTM price to Dynetics is approximately █████, which is made up of the
█████ LibertyWorks proposal and █████ in material purchased by Dynetics (i.e., material
listed in the Dynetics tab of the Do-Buy list submitted on March 29, 2019).

The latest reduction in hours █████ includes substantial reductions in the PTM Subsystem
Build & Test Phase, as well as reductions in the Critical Design Review (CDR) Phase.  The
reductions in the PTM Subsystem Build & Test Phase are a result of assuming a higher test
success rate and thus reducing subsystem test hours in view of LibertyWorks' separate risk
reduction efforts, and Dynetics' ability to support various efforts.   The reductions in the CDR
Phase are a result of collapsing the PDR & CDR Phases together.

This document and attachments may contain trade secrets, commercial, or financial information that is privileged and confidential to
Rolls-Royce North American Technologies Inc.

**Exhibit B**

Upon agreement with Dynetics on the number of hours and price stated herein, LibertyWorks will prepare an updated proposal and BOEs.  Please let us know if you would like to have a call to discuss this proposal or next steps.

For questions concerning this correspondence, please feel free to contact me at (317) 478-7991 or James.Pinyerd@rolls-royce.com.

Kind regards,

James Pinyerd
Commercial Manager

This document and attachments may contain trade secrets, commercial, or financial information that is privileged and confidential to Rolls-Royce North American Technologies Inc.

Exhibit C

# Exhibit D

Exhibit F



**Rolls-Royce North American
Technologies Inc. | LibertyWorks®**

September 26, 2019

Ronnie Chronister
Dynetics, Inc.
1002 Explorer Blvd.
Huntsville, AL 35806

Subject:      Dynetics' letter dated September 17, 2019 ("Dynetics Letter"), Exclusivity

Reference:    Subcontract No.: DI-SC-18-58, Purchase Order No.: SB600065
              D3I HEL-TVD Teaming Agreement effective April 21, 2017 ("Teaming
              Agreement")

Mr. Chronister:

This letter is to inform Dynetics that LibertyWorks disputes and disagrees with Dynetics' claim
that LibertyWorks has not met the requirements to maintain the exclusivity arrangement under
the above-referenced Teaming Agreement.  As a result, the process for dispute resolution under
Section 10.10 of the Teaming Agreement is hereby initiated.

Under the exclusivity clause of the Teaming Agreement, LibertyWorks agreed to not participate
in any other proposal effort for HEL-TVD.  With this commitment, LibertyWorks allowed its
significant, privately-funded Power and Thermal Management solutions to be used in Dynetics'
HEL-TVD proposal.   In return for LibertyWorks' commitment, Dynetics agreed that
LibertyWorks will be Dynetics' exclusive source for Power and Thermal Management for the
HEL-TVD program and that Dynetics' shall not pursue other proposals for Power and Thermal
Management for the HEL-TVD program.

This document and attachments may contain trade secrets, commercial, or financial information that is privileged and confidential to
Rolls-Royce North American Technologies Inc.

**Exhibit F**

Per Section 6 of the Teaming Agreement, the exclusivity arrangement requires that LibertyWorks meet (1) pricing targets established by Dynetics, (2) schedule requirements, and (3) technical capabilities.

LibertyWorks met Dynetics price target for Option 3 on April 26, 2019. On April 25, 2019, LibertyWorks provided a letter to Ms. Rachel Cope that stated, among other things, "the price of LibertyWorks' proposal is approximately ███, which includes labor, travel, and the ███ in material previously discussed (i.e., 'thermal and other system related hardware' identified in the Do-Buy list submitted on March 29, 2019). Therefore, the total [Power and Thermal Management] price to Dynetics is approximately ███, which is made up of the ███ LibertyWorks proposal and ███ in material purchased by Dynetics (i.e., material listed in the Dynetics tab of the Do-Buy list submitted on March 29, 2019)." In a telephone call the following day with Mr. Mark Wilson (COO – LibertyWorks), Mr. Chronister stated that this price in the April 25, 2019, proposal is acceptable and received a letter from Ms. Rachel Cope on the same day confirming resolution of the negotiation on price and withdrawing the existing stop work order.

In a claim related to meeting a price target for Option 3, Dynetics asserts that LibertyWorks failed to substantiate the cost of the Bill of Materials for Option 3. As noted above, Dynetics accepted the April 25, 2019, proposal price, which incorporated substantiation of cost for the Bill of Materials. Again, LibertyWorks met Dynetics' price target when Dynetics accepted the April 25, 2019, proposal price.

In the Dynetics Letter, Dynetics' claims that LibertyWorks did not meet Dynetics' pricing targets by "overrunning cost by 29%" in Option 2. LibertyWorks met Dynetics' pricing target for Option 2 when Dynetics accepted LibertyWorks' price proposal for Option 2. The additional cost required to complete Option 2 was directly caused by Dynetics' instruction to change the power and thermal system to include ████████. Also, Dynetics claims in the Dynetics Letter that LibertyWorks breached its obligations in Option 2 "by missing January's Preliminary Design Review (PDR) schedule date." In fact, LibertyWorks fulfilled its PDR responsibilities in January's PDR and the Government approved Team Dynetics' PDR, which included LibertyWorks' PDR submission. Subsequent to this approval by the Government, the Government selected Team Dynetics for award at least in part due to LibertyWorks' efforts for January's PDR.

In the Dynetics Letter, Dynetics makes several claims that do not appear to be relevant to whether Dynetics can end the exclusivity arrangement in accordance with the Teaming Agreement.

First, Dynetics asserts that it has "cost concerns around Data Rights submittals." The updates to LibertyWorks' Data Rights submittals have been driven by a change to ████████ – a change directed by Dynetics - and the decision to bring other privately-funded data/inventions to the program. In any event, on April 26, 2019, Dynetics accepted

This document and attachments may contain trade secrets, commercial, or financial information that is privileged and confidential to Rolls-Royce North American Technologies Inc.

LibertyWorks' price for Option 3, and the "cost concerns" stated in the Dynetics Letter are not a valid justification for ending the exclusivity arrangement according to the Teaming Agreement.

Second, Dynetics expresses dissatisfaction over not having reviewed or provide input into the battery vendor or "access to the battery specifications." LibertyWorks discussed the battery during PDR and walkup Critical Design Review (CDR) and has recently offered greater access to Dynetics. Regardless, the ability to review LibertyWorks' battery vendor, to provide input to LibertyWorks' battery vendor, or to have access to battery details is not a condition for maintaining the exclusivity arrangement.

Third, Dynetics suggests that LibertyWorks needed permission before it could bring solutions created by independent research and development (IRAD) to the HEL-TVD program and that inclusion of IRAD solutions puts the program at risk. However, these are not conditions required by the Teaming Agreement for maintaining the exclusivity arrangement.

In addition, the original configuration for the power and thermal system from LibertyWorks was based on a system being designed and built under an IRAD effort. Dynetics was aware of this fact at the beginning of the program, never raised the concerns it alleges in the Dynectics Letter, and chose LibertyWorks as its power and thermal system provider at least partially based on its IRAD activities.

Dynetics also claims that the negotiation for Option 3 went "much longer than 90 days" and, therefore, Dynetics has the ability to terminate the Teaming Agreement. Per Section 8.(g) of the Teaming Agreement, an event that can result in termination includes "inability of Dynetics and [LibertyWorks] after good faith negotiation to reach agreement on the price and terms and conditions of the subcontract within ninety (90) days from award of the prime contract for the Contract to Dynetics" (emphasis added). On January 31, 2019, Dynetics notified LibertyWorks that Dynetics was awarded Option 3 (herein, the "Award Date"). The Terms and Conditions of the Subcontract agreed under Option 2 (i.e., prior to the Award Date) apply to Options 2 and 3. As noted above, the parties agreed on price for Option 3 on April 26, 2019. The number of days between Award Date and agreement on both the terms and conditions and the price (April 26, 2019) is 85 days. Because Dynetics and LibertyWorks completed the negotiation of both items in less than ninety (90) days from the Award Date, Dynetics' claim that it has the ability to terminate the Teaming Agreement via Section 8.(g) is incorrect.

In summary, the exclusivity arrangement under the Teaming Agreement is still in effect. Dynetics' claim that it has justification to end the exclusivity arrangement under the Teaming Agreement is not supported. Because the parties dispute the ability of Dynetics to end the exclusivity arrangement, the dispute resolution provision of the Teaming Agreement must be followed.

This document and attachments may contain trade secrets, commercial, or financial information that is privileged and confidential to Rolls-Royce North American Technologies Inc.

Please be assured that LibertyWorks, with the support of the rest of Rolls-Royce North America, is fully committed to having a good relationship with Dynetics and delivering the Power and Thermal Management solution for the HEL-TVD program and ultimately to the warfighter.

All correspondence and any questions should be directed to James Pinyerd, Commercial Manager at James.Pinyerd@rolls-royce.com, Mark Wilson, COO-LibertyWorks at Mark.Wilson@liberty.rolls-royce, and Caroline Chien, Chief Legal Counsel at Caroline.Chien@rolls-royce.com.

Kind regards,

James Pinyerd
Commercial Manager

This document and attachments may contain trade secrets, commercial, or financial information that is privileged and confidential to Rolls-Royce North American Technologies Inc.

Exhibit G

**Dynetics**

30 September 2019

<u>**VIA E-mail and Certified Mail**</u>

Rolls-Royce North American Technologies, Inc.
LibertyWorks Division
450 S. Meridian Street
Indianapolis, IN 46225

Attention:          James Pinyerd, Commercial Officer

     Subject:          LibertyWorks Letter dated September 26, 2019

     Reference:          Subcontract No.: DI-SC-18-58, Purchase Order No.: SB600065
                      D3I HEL-TVD Teaming Agreement effective April 21, 2017

Mr. Pinyerd:

Dynetics is in receipt of your letter dated September 26, 2019.  In that letter, Rolls-Royce North American Technologies, Inc., LibertyWorks (hereinafter "LibertyWorks") disputes that LibertyWorks failed to meet the requirements for exclusivity under the D3I HEL-TVD Teaming Agreement effective April 21, 2017.  Moreover, LibertyWorks designates the matter a dispute per Section 10.10 of the Teaming Agreement.

After review, Dynetics has determined that LibertyWorks is mistaken as to its factual assertions as well as conclusions drawn from the faulty factual assertions; Dynetics stands by the assertions made in our letter of September 17, 2019.  Dynetics recognizes the dispute process has been engaged and is scheduling the executive management meeting as required under Section 10.10 of the Teaming Agreement.  We look forward to addressing the matter at that meeting.

All correspondence and any questions should be directed to Ronnie Chronister, Sr. Vice President at [Ronnie.Chronister@Dynetics.com](mailto:Ronnie.Chronister@Dynetics.com) and Michael Stebbins, General Counsel at [Michael.Stebbins@Dynetics.com](mailto:Michael.Stebbins@Dynetics.com).

Sincerely,

Ronnie Chronister
Sr. Vice President of Contracts
Dynetics, Inc.

**Exhibit G**

Exhibit H

**⊿Dynetics**

07 October 2019

<u>**VIA E-mail and Certified Mail**</u>

Rolls-Royce North American Technologies, Inc.
LibertyWorks Division
450 S. Meridian Street
Indianapolis, IN 46225

Attention:        James Pinyerd, Commercial Officer

   Subject:       LibertyWorks and Dynetics Executive Level Review Oct. 7, 2019

   Reference:    Subcontract No.: DI-SC-18-58, Purchase Order No.: SB600065
                       D3I HEL-TVD Teaming Agreement effective April 21, 2017

Mr. Pinyerd:

After the Executive Level Review conducted this October 7, 2019, Dynetics maintains its position that LibertyWorks failed to meet the requirements for exclusivity in the Teaming Agreement effective April 21, 2017.  LibertyWorks disputed Dynetics' position during the Executive Level Review.  The Parties discussed and could not reach agreement.  Dynetics considers the Executive Level Review process complete with the Parties unable to reach agreement.      Consequently, Dynetics shall enforce its determination that LibertyWorks no longer qualifies for exclusivity under the Teaming Agreement.

All correspondence and any questions should be directed to Ronnie Chronister, Sr. Vice President at   Ronnie.Chronister@Dynetics.com   and   Michael   Stebbins,   General   Counsel   at Michael.Stebbins@Dynetics.com.

Sincerely,

Ronnie Chronister
Sr. Vice President of Contracts
Dynetics, Inc.

**Exhibit H**

# Exhibit I



**Rolls-Royce North American
Technologies Inc. | LibertyWorks®**

October 10, 2019

Ronnie Chronister
Michael Stebbins
Dynetics, Inc.
1002 Explorer Blvd.
Huntsville, AL 35806

Subject:      Dynetics' letter dated October 7, 2019; Exclusivity

Dear Mr. Chronister and Mr. Stebbins:

We are writing in response to your October 7 letter.  That letter contends that: (1) LibertyWorks failed to meet the requirements for exclusivity set forth in Paragraph 6 of the parties' Teaming Agreement; (2) the parties were unable to resolve the dispute during the purported October 7 Executive Level Review; and (3) Dynetics is permitted to immediately enforce its unilateral determination that LibertyWorks no longer qualifies for exclusivity.  As discussed during our previous correspondence and telephone calls, we disagree with each of these contentions.  If Dynetics continues to insist that LibertyWorks no longer qualifies for exclusivity, LibertyWorks intends to enforce its rights, as appropriate.

As you know, LibertyWorks disputes Dynetics' claim that LibertyWorks breached Paragraph 6 of the Teaming Agreement.  Moreover, LibertyWorks does not consider our October 7 telephone conversation to be the "Executive Level review" referenced in Section 10.10 of the Teaming Agreement.  That section contemplates a 15-30 day review period, which presumably would include an internal review by the executives of each party followed by an informed discussion between Dynetics' and LibertyWorks' executives.  Your attempt to circumvent this requirement by scheduling a call immediately following the 10-day initial discussion period and then unilaterally declaring the conclusion of the "Executive Level review" violates the express terms of the Teaming Agreement and Dynetics' general obligation to operate in good faith.

Further, even if we are unable to resolve our dispute upon the conclusion of a proper Executive Level review, nothing in the Teaming Agreement gives Dynetics the right to terminate exclusivity until the dispute is settled by arbitration.  Section 10.10 expressly provides: "If this review process is not successful within a reasonable period of time (normally 15-30 days, unless extended by agreement of the Parties), then the matter shall be designated as a dispute and shall

This document and attachments may contain trade secrets, commercial, or financial information that is privileged and confidential to
Rolls-Royce North American Technologies Inc.

**Exhibit I**

be submitted to and settled by binding arbitration enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA") and conducted pursuant to the then current rules of the American Arbitration Association."  In other words, if we are not able to resolve the dispute in an Executive Level review, the dispute "shall be submitted and settled by binding arbitration."  Therefore, Dynetics may not unilaterally terminate exclusivity; at a minimum, it must wait until the conclusion of the arbitration process to determine whether such a termination is proper.

We ask you to consider the foregoing and inform us by no later than October 14, if Dynetics still intends to terminate exclusivity effective immediately.  If Dynetics takes this position or, if otherwise, we do not receive a response by October 14, LibertyWorks intends to enforce its rights, both in law and in equity, as appropriate under both the Teaming Agreement and the Subcontract.

In the meantime, in light of the reasonable likelihood of litigation between us, we ask that you confirm that Dynetics is preserving all documents and information, including hard copy and electronic documents, emails, text messages, voicemails, instant messages and all other forms of documents or communications, related to the Project, Teaming Agreement and Subcontract, including but not limited to:

- Any communications with any vendor or other company related to the work LibertyWorks was to perform under Option 3;

- Any communications with any representative of the Customer regarding the Project including, but not limited to, any proposals submitted by Dynetics, any representations made to the Customer regarding LibertyWorks' involvement in the Project, any Customer approval of LibertyWorks as a Subcontractor, and any discussions with the Customer regarding using another vendor instead of LibertyWorks;

- Any communications with Lockheed Martin or any other team members regarding the Project;

- Dynetics' complete contract file;

- Any documents related to Dynetics' purported "pricing target" including, but not limited to, any communications with LibertyWorks or the Government regarding the target, any internal communication regarding the target, and any documents relating to how the target was calculated; and

- Any internal communications regarding the relationship between LibertyWorks and Dynetics including any correspondence regarding LibertyWorks's Option Year 3 proposal and the decision to terminate the exclusivity agreement.

We look forward to hearing from you and hope that we are able to resolve these issues without litigation.

This document and attachments may contain trade secrets, commercial, or financial information that is privileged and confidential to Rolls-Royce North American Technologies Inc.

All correspondence and any questions should be directed to James Pinyerd, Commercial Manager, at James.Pinyerd@rolls-royce.com, Mark Wilson, COO-LibertyWorks, at Mark.Wilson@liberty.rolls-royce, and Caroline Chien, Chief Legal Counsel, at Caroline.Chien@rolls-royce.com.


Kind regards,

James Pinyerd
Commercial Manager


cc:    Dawn Stern, DLA Piper LLP
       Brett Ingerman, DLA Piper LLP

This document and attachments may contain trade secrets, commercial, or financial information that is privileged and confidential to Rolls-Royce North American Technologies Inc.

Marion Superior Court, Civil Division 1

Filed: 10/20/2019 6:37 PM
Clerk
Marion County, Indiana

# Exhibit J



October 15, 2019

<u>**VIA E-mail and Certified Mail**</u>

Rolls-Royce North American Technologies, Inc.
LibertyWorks Division
450 S. Meridian Street
Indianapolis, IN 46225

Attention:           James Pinyerd, Commercial Officer

     Subject:        Termination for Default

     Reference:      Subcontract No.: DI-SC-18-58, Purchase Order No.: SB6000065
                      D3I HEL-TVD Teaming Agreement effective April 21, 2017

Mr. Pinyerd:

After further consideration and review, please be advised that Dynetics, Inc. ("Dynetics") is terminating the above-referenced Teaming Agreement pursuant to Section 8.  As you know, Dynetics had recently informed LibertyWorks that it no longer qualified for exclusivity under the Teaming Agreement for failing to meet (1) pricing targets, (2) schedule requirements, and (3) technical capabilities for Option 3 under the D3I High Energy Laser Task Order Contract.  The details of these defaults were set forth in our letter to you dated September 17, 2019.  Indeed, LibertyWorks inability to meet those requirements have precluded the parties from definitizing Option 3 work and is a material default, incapable of cure.  While Dynetics understands that LibertyWorks likely will dispute this claim, given the current circumstances of Option 3, Dynetics has no choice but to solicit bids for the current work and any further effort from others to meet the warfighter's needs.

In addition, Dynetics recognizes that the Dispute Resolution procedure of the Teaming Agreement calls for an Executive Level review (should one party request it) followed by binding arbitration if the matter remains in dispute.  However, nothing in the Teaming Agreement requires Dynetics to maintain the *status quo* pending the completion of this process contrary to LibertyWorks' position.  Moreover, please note that Dynetics termination of this Teaming Agreement under Section 8 negates "any liability of any party to the other" pursuant Section 10.1.  Similarly, Section 10.9 emphasizes that in no event shall either party be liable to the other party for consequential, incidental or punitive loss, damages or expenses (including loss profits or savings) even if advised of their possible existence.  This limitation of liability is reiterated in Section 10.10.  In short, Dynetics will respond to any request for Executive Level review or arbitration but such efforts would appear to be futile due to the nature of LibertyWorks default and this limitation of liability.

**Exhibit J**

James Pinyerd, Commercial Officer
October 14, 2019
Page 2

Finally, please be advised that Dynetics is now represented by Robert J. Symon, Esq. Mr. Symon is with the law firm of Bradley Arant Boult Cummings in Washington, DC. His phone number is 202-719-8294. His email is rsymon@bradley.com. Going forward, we would appreciate it if you or your legal counsel would communicate with Mr. Symon regarding this matter.

Sincerely,

Ronnie Chronister
Sr. Vice President of Contracts
Dynetics, Inc.


CC:    Mike Bridgewater - RRLW
       Robert J. Symon - BARC

# Exhibit K



**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

*For Consumer or Employment cases, please visit **www.adr.org** for appropriate forms.*

| |
|---|
| You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement. |

| |
|---|
| Name of Respondent:  Dynetics, Inc. |

| |
|---|
| Address:  1002 Explorer Boulevard |

| City:  Huntsville | State:  Alabama | Zip Code:  35806 |
|---|---|---|
| Phone No.:  (256) 964-4000 | Fax No.:  n/a | |

| |
|---|
| Email Address:  Rachel.Cope@dynetics.com |

| |
|---|
| Name of Representative (if known):  Robert J. Symon, Esq. |

| |
|---|
| Name of Firm (if applicable):  Bradley Arant Boult Cummings LLP |

| |
|---|
| Representative's Address:  1615 L Street NW, Suite 1350 |

| City:  Washington | State:  District of Columbia | Zip Code:  20036 |
|---|---|---|
| Phone No.:  (202) 719-8294 | Fax No.:  (202) 719-8394 | |

| |
|---|
| Email Address:  rsymon@bradley.com |

| |
|---|
| The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration. |

| |
|---|
| Brief Description of the Dispute: |
| Rolls-Royce and Dynetics entered into a Teaming Agreement to develop a vehicle-based laser for the U.S. Army.  Rolls-Royce was to be the exclusive provider of the thermal and power technology for the project pursuant to the Teaming Agreement with the prime contractor, Dynetics. Dynetics breached the Teaming Agreement by unilaterally declaring that Rolls-Royce failed to meet the requirements for exclusivity under Paragraph 6 of the Teaming Agreement, terminating the Teaming Agreement, and threatening to seek out other vendors to perform the work. |

| |
|---|
| Dollar Amount of Claim: $  1,000,0000 |

| |
|---|
| Other Relief Sought: ☐ Attorneys Fees   ☐ Interest   ☐ Arbitration Costs   ☐ Punitive/Exemplary ☑ Other:  Injunctive relief. |

| |
|---|
| Amount enclosed: $  7,700 |
| In accordance with Fee Schedule: ☐ Flexible Fee Schedule  ☑ Standard Fee Schedule |

| |
|---|
| Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute: |
| Claimant requests an arbitrator(s) with experience with commercial disputes and government contracts. |

| |
|---|
| Hearing locale:  Huntsville, Alabama |
| *(check one)* ☐ Requested by Claimant  ☑ Locale provision included in the contract |

| Estimated time needed for hearings overall: | hours  or  4 to 5 | days |
|---|---|---|

*Please visit our website at www.adr.org if you would like to file this case online.*
*AAA Case Filing Services can be reached at 877-495-4185.*

**Exhibit K**

 INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**COMMERCIAL ARBITRATION RULES
DEMAND FOR ARBITRATION**

| | | |
|---|---|---|
| Type of Business: Engineering and Technological Services for U.S. Government Military Contracts | | |
| Claimant: Rolls-Royce North American Technologies Inc. | Respondent: Dynetics, Inc. | |
| Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other? <br> No. | | |
| Signature (may be signed by a representative): *Harry P. Rudo* | Date: <br> 10/20/2019 | |
| Name of Claimant: Rolls-Royce North American Technologies Inc. | | |
| Address (to be used in connection with this case): 2059 S. Tibbs Avenue | | |
| City: Indianapolis | State: Indiana | Zip Code: 46241 |
| Phone No.: (317) 230-2000 | Fax No.: n/a | |
| Email Address: caroline.chien@Rolls-Royce.com | | |
| Name of Representative: Brett Ingerman; Dawn Stern; Harry P. Rudo | | |
| Name of Firm (if applicable): DLA Piper LLP (US) | | |
| Representative's Address: 6225 Smith Avenue | | |
| City: Baltimore, Maryland, 21209 | State: Maryland | Zip Code: 21209 |
| Phone No.: (410) 580-3000 | Fax No.: (410) 580-3001 | |
| Email Address: brett.ingerman@dlapiper.com | | |
| To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. At the same time, send the original Demand to the Respondent. | | |

*Please visit our website at www.adr.org if you would like to file this case online.
AAA Case Filing Services can be reached at 877-495-4185.*